# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

PHILLIP MICHAEL SCOTT　　　　　　　*

Plaintiff　　　　　　　　　　　　　　*

　　　v.　　　　　　　　　　　　　　*　Civil Action No: JFM-09-3328

LEE INGRAM, et al.　　　　　　　　　*

Defendants　　　　　　　　　　　　　*

　　　　　　　　　　　　　　　　　***

## **MEMORANDUM**

Now pending and ripe for this court's review are defendants' motions to dismiss or for summary judgment. ECF No. 39 and 51. Plaintiff opposes the motions. ECF No. 45, 46, and 56. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

## Background

Phillip Michael Scott ("Scott") is an inmate currently housed at the North Branch Correctional Institution ("NBCI"). He filed this civil rights action on December 11, 2009, seeking damages against the Maryland Department of Corrections. He alleged that on February 28, 2009, a number of correctional officers at NBCI assaulted and choked him until he lost consciousness. ECF No. 1. On July 15, 2010, this court granted the Department of Corrections' motion to dismiss,[1] but denied its summary judgment motion. Plaintiff's motion for leave to file an amended complaint was granted. ECF No. 23.

The following facts were set out by Scott in his amended complaint. ECF No. 21. On February 28, 2009, Correctional Officer Lee Ingram choked Scott with his hands and beat him in the head and face. During the assault Ingram called Scott racist names, threatened to kill him,

---

1 The Department of Corrections was dismissed from the case because it is immune from suit under the Eleventh Amendment. ECF No. 23.

and wrote a false report regarding the incident in order have Scott found guilty of an institutional infraction. Scot claims Ingram choked him until he passed out and that Correctional Officer Wetzel held him down while he was being choked. *Id*. at p. 2. The assault was in retaliation for Scott filing grievances under the Administrative Remedy Procedure Act ("ARP").[2] Scott also claims that Officers D. Sterling, and D. Messer assisted Wetzel in holding him down while Ingram was choking him. *Id*.

In addition, Scott claims that Lt. John Whiteman, Sgt. Gene Miller, and Correctional Officer Gardenhour stood by and watched the incident, taking no action to stop it. He also claims Lt. Whiteman retaliated against him for filing ARPs by denying Scott showers, walks, and telephone calls. Scott asserts that all officers conspired to lie on the use of force incident report in order to have him found guilty at a disciplinary hearing.

Scott asserts that Nurse Allison Nardi failed to conduct a medical evaluation after she was called for a use of force incident and lied on the medical form when she indicated that he did not need medical attention. ECF No. 21 at p. 3. He also accuses the Warden of refusing to take any action against the officers after Scott reported that officers were not signing his administrative remedies, had assaulted him, and were harassing him by refusing to transfer him to another facility. Lastly, Scott asserts that the Commissioner and Warden failed to take action after he indicated that he wanted to file criminal charges against the correctional officers. He claims that they also refused to transfer him to another institution. *Id*. at pp. 3 – 4. Scott seeks monetary damages and injunctive relief, including terminating defendants from employment and criminally prosecution.

---

[2] He claims Lt. John Whiteman told him three days before the assault that he would not sign off on his ARPs and told him he was a thorn in his side that "would be plucked in a bad way." ECF No. 21 at p. 3.

Defendant Nardi has filed a motion to dismiss or, in the alternative, for summary judgment. ECF No. 39. Scott has filed an opposition and supporting memorandum. ECF Nos. 45 & 46. In addition, the remaining defendants have filed a motion for summary judgment and Scott has filed an opposing affidavit. ECF Nos. 51 & 56.

**Standard of Review**

Fed. R. Civ. P. 56(c)(2) provides that:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosures materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

## Analysis

### Medical Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Nurse Nardi argues that the complaint against her is subject to dismissal because Scott received constitutionally adequate medical care. ECF No. 39. She affirms that on February 28, 2009, she was called to Scott's NBCI housing unit to evaluate him for injuries he might have sustained. She claims that he refused to speak to her and refused to come out of his cell. She noted that she would evaluate him later if necessary. *Id*. at Ex. A, p. 3; Ex. B, pp. 2 –3. [3] Nardi also maintains that even if it were assumed that plaintiff did not receive the unspecified medical care he claims he was entitled to receive, he has failed to specify how he was harmed. *Id*.

On March 2, 2009, Nardi saw Scott when he was brought to the NBCI dispensary to be examined for a complaint of neck "soreness." She maintains that this was a recurring complaint,

---
[3] Page numbers reference ECF pagination.

predating the February 28, 2009 use of force incident. ECF No. 39 at Ex. A, p. 3; Ex. B pp. 4 – 5. Nardi's examination revealed no redness of Scott's neck and a full range of motion ("ROM"); he did, however, complain of stiffness when his neck was rotated toward his shoulders. *Id.* Scott denied the need for pain medication at that time. He was discharged back to his housing unit with instructions to return to the dispensary if necessary. When seen by Physician's Assistant ("P.A.") Kevin McDonald on March 4, 2011, Scott noted that an officer attempted to strangle him during a February 28, 2009 encounter in the segregation unit. He reported chronic neck pain with a limitation of motion. *Id*. at Ex. B, p. 6. Conservative measures were to be taken and a cervical x-ray was recommended. *Id*. at p. 7. The x-ray, performed on March 9, 2009, revealed a straightening of the lordatic curve in Scott's neck "probably due to spasm." *Id*. at pp. 6 and 8. The report also notes no acute bony trauma and provides a probable diagnosis of a sprain. *Id*. Scott was prescribed Baclofen, a muscle relaxer, on March 4, 2009. *Id*. pp. 6 and 9.

In his opposition, Scott asserts that having sustained a "vicious attack on his life" Nardi disregarded his request for medical attention and stated that his face looks alright from her "mere visual assessment." In his affidavit he accuses Nardi of making "bold face lies" when she states that he was acting out in an "uncontrollable" manner[4] and "refused to speak to me" and "to come out of his cell" on February 28, 2009. ECF No. 45. Scott claims that when Nardi asked him if he was alright he responded that he was not and that the officers had beaten and choked him to unconsciousness. *Id*. at p. 6. He alleges Nardi replied that "his face looks alright" and left

---

[4] Nardi's affidavit includes a description of events taking place outside of her presence. ECF No. 39 at Ex. A, p. 3, ¶ 3. Plaintiff's point regarding those assertions is well taken by the court. Nardi's affidavit as far as it concerns the use of force incident adds no weight to the evidence provided by the remaining defendants and will not be relied upon by the court in its analysis of that claim.

without conducting an evaluation. *Id*. Scott notes that he was in serious pain and notified Nardi of this on March 2, 2009, which is why he was given two pain pills. *Id*. at p.7. He further maintains that while he may have previously had neck pain, the beating by the officers made the condition much worse. *Id*. at p. 8.

It is undisputed that Scott received medical care two days after the assault on March 2, 2009. Scott claims that he should have received what amounts to emergency medical attention on the day of the assault, but it is unclear what type of care he expected from Nardi. Assuming Scott's neck injury was a serious medical condition, the question remains whether Nardi knew about the condition of his neck and callously refused to render proper care on the day of the alleged assault. The undisputed evidence establishes that Scott had complained of neck pain before the day of the assault. He does not claim that he notified Nardi when she came to his cell that his neck pain had worsened. Indeed, when he did complain of neck pain two days later he was provided with pain medication and a request for an x-ray was made. "[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a medical provider linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge). There is no evidence indicating Nardi knew Scott's neck required immediate medical attention; all accounts describe Scott standing in his cell with no apparent impediment to his ability to move. Thus, her motion for summary judgment shall be granted.

Excessive Use of Force Claim

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 130 S. Ct. 1175, 1178-1179 (2010) (holding the core judicial inquiry when a prisoner alleges excessive force is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*.

The state defendants claim that Wetzel and Ingram were escorting Scott for a cell move at 9:00 a.m. on February 28, 2009, when he began to yell to other inmates on the tier. ECF No. 51 at Ex. 1 and 2. Ingram gave Scott several direct orders to stop yelling, but he was noncompliant. As the officers rounded a corner, Scott attempted to pull away from Ingram and in doing so he elbowed Ingram in the stomach and began to resist. Both Ingram and Wetzel affirm that they first took Scott to the wall to gain control. Due to his continued kicking and thrashing, they took him to the floor and place him on his back until other officers could arrive to

assist. *Id*. Lt. Whiteman and Sgt. Miller assisted the officers in holding down his legs. Scott continued to yell and was very agitated. *Id*. Correctional Officers Sterling and Messer arrived on the scene and assisted in lifting Scott from the floor into a cell without further incident. They note that he was not assaulted nor denied medical treatment, but was placed face down on the bunk. *Id*. at Ex. 3. Officers exited the cell and the handcuffs were removed through the feed-up slot.[5]

Later the same day, Scott spoke to Whiteman and requested to be removed from his cell. Whiteman answered that he would be moved if he complied with all orders, including the taking of photographs for the Use of Force Reports. Scott agreed and the cell move occurred without incident. Photographs were taken and Scott was charged with violating Rules 101, 400, 401 and 312.[6] At a subsequent adjustment hearing held on March 10, 2009, Scott was found guilty of the four rule violations. He received 365 days of disciplinary segregation for violation of Rule 101, 150 days of consecutive segregation for a Rule 312 violation, and 90 days concurrent each for violation of Rules 400 and 401.

On March 2, 2009, Captain Hamby called the Internal Investigative Unit ("IIU") to report that Scott had alleged he had been assaulted by Officer Ingram. Scott was interviewed by an IIU Detective Sergeant Kandace Mills on March 16, 2009. ECF No. 51 at Ex. 5. He reported that he had been choked by Ingram while Wetzel sat on his back. He denied kicking, hitting, or otherwise resisting in any way and denied taking aggressive actions toward the officers during

---

[5] State defendants affirm that Nurse Nardi was called to the housing unit, but Scott refused to see her and denied he had any injuries. ECF No. 51 at Ex. 4, pp. 31 – 33. He also refused to be photographed. Nardi observed Scott from the doorway and did not see any visible signs contusions or injury.

[6] Rule 101 – Assault or battery on staff
 Rule 400 – Disobeying a direct lawful order.
 Rule 401 – Refusing or failing to accept or carry out any facility assignment.
 Rule 312 – Interfering with or resisting the duties of staff. ECF No. 51 at Memorandum, pp. 6 – 7, fn. 6.

the escort. When asked if he had suffered any injuries, Scott replied that he hurt his neck and his lip was busted on the inside, but he did not report the injury to his lip on March 2, 2009 when he was seen by medical staff. *Id*. at p. 13. In addition to Scott and the officers involved in the use of force, another inmate, Gary Grissom, was interviewed. *Id*. at p.14. Grissom claimed he witnessed the incident, but admitted during the interview that he could not see who was escorting Scott and could not actually see the incident. Grissom confirmed hearing Scott tell other inmates on the tier where he was being moved. *Id*. Grissom asked Detective Mills, "Did I mess this up for him?" at the end of his interview. Each of the officers interviewed denied assaulting Scott. Mills concluded that there was no evidence to substantiate Scott's claim he was assaulted and that no further investigative action would be taken. *Id*.

The undisputed evidence establishes that some amount of force was used against Scott. There is a genuine dispute of material fact concerning whether that force included choking Scott into unconsciousness. Resolution of that dispute involves a determination of the parties' credibility which this court may not do on summary judgment. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) ("Credibility determinations ... are jury functions, not those of a judge...."). Thus, the motion to dismiss or for summary judgment shall be denied with respect to the excessive force claim.

<u>Conditions of Confinement Claim</u>

Scott states that he was placed in a cold cell without shoes for six hours and was subsequently denied showers, walks and telephone calls for 13 days from February 25, 2009 to March 10, 2009. ECF No.    Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*,

452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).

"[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Plaintiff has failed to produce evidence that the conditions described caused him serious or significant harm. ECF No. 56. Defendants are entitled to summary judgment on the conditions claim.

### Non-dispositive motions

Scott seeks the appointment of counsel, arguing that he is an indigent prisoner who cannot afford an attorney to assist him in this complex case. ECF No. 29. Plaintiff was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(e). Under that statute a court of the United States has the discretion to request an attorney to represent any person unable to afford counsel. In such situations, the appointment of counsel may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in any particular case rests on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984); *abrogated on other grounds by*

*Mallard v. U.S. District Court*, 490 U.S. 296, 298 (1989) (holding that § 1915 does not authorize compulsory appointment of counsel). The existence of exceptional circumstances "[w]ill turn on the quality of two basic factors--the type and complexity of the case, and the abilities of the individuals." *Id.* Although Scott has shown the wherewithal to present his complaint and papers, the court deems it appropriate for counsel to be appointed in this matter. His motion shall be granted.

Counsel for defendant Nardi has filed a motion to withdraw as attorney. ECF No. 58. The motion shall be granted.

Finally, Scott has filed a request for production of documents, interrogatories, and request for admission with the court. ECF No. 59, 60 and 61. To the extent the request for production of documents was construed as a motion, it shall be denied. At the time Scott filed the discovery requests no scheduling order had been entered in this case which means he was not entitled to engage in discovery. Additionally, discovery documents are not to be filed with the court. In light of the court's appointment of counsel to represent Scott, he is advised to discuss discovery with appointed counsel. Scott is further advised that upon appointment of counsel he is no longer permitted to communicate directly with opposing counsel or with this court; rather his attorney will do so for him.

A separate Order reflecting the rulings entered in this opinion shall follow.


   August 25, 2011                                  /s/
Date                                                      J. Frederick Motz
                                                         United States District Judge